UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | 1:05-CR-4 |
| | ) | Mag. No. 1:05-MJ-23 |
| | ) | Collier/Carter |
| SEVERO MESA | ) | |

REPORT AND RECOMMENDATION

I. Introduction

Defendant Severo Mesa's motion to suppress (Court File No. 56) is pending before the undersigned having been referred for a report and recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B). The defendant has moved to suppress his January 20, 2005, statement and the search of his vehicle. The United States opposes the motion.

The defendant contends that the search of his vehicle is constitutionally infirm because the search was conducted without a search warrant and the warrantless search was conducted without the consent of the defendant. Although the defendant contends "[t]hat subsequent to his arrest, the law enforcement officers searched his vehicle finding contraband in the form of cocaine[,]" he claims that the search was unconstitutional because he had exited his truck and was outside of his vehicle when he was arrested (Court File No. 56). In addition, the defendant argues that the statement given by him to the arresting officers should be suppressed because "while he has the ability to understand many words in English and is conversant to the degree of being able to understand simple concepts, that the detectives did not review the Miranda warnings to him in Spanish" (Court File No. 56).

1

The United States submits the vehicle search was justified as a lawful search incident to an arrest and the search was based on probable cause as the result of a K-9 alert. In addition, the government contends defendant voluntarily and knowingly waived his constitutional rights prior to giving a statement. For the reasons stated herein, it is **RECOMMENDED** that defendant's motion to suppress be **DENIED**.

## II. Relevant Facts

On April 28, 2005, and on May 2, 2005, the Court conducted hearings on the defendant's motion to suppress. The Court heard testimony from Officer Chris Harvey of the Hamilton County Sheriff's Department, Detective Bill Bailey of the Hamilton County Sheriff's Department, and Officer Henry "Hank" Ritter of the Hamilton County Sheriff's Department Traffic K-9 unit.

Officer Harvey has been with the Hamilton County Sheriff's Department for approximately one and a half years and had been with the narcotics division for six months prior to this instant arrest. Officer Harvey testified the arrest of defendant occurred approximately 100 yards from defendant's vehicle and defendant's vehicle was searched after K-9 Jack alerted on it.

Subsequent to his arrest, defendant was transported to law enforcement offices located at 317 Oak Street. Officer Harvey, Officer David Sowder, and Officer Mark Eisenbeis were present for the custodial interrogation of defendant at the Oak Street office. Officer Eisenbeis, who had been present to provide interpretation if necessary, departed after determining defendant did not need an interpreter.

Officer Harvey read defendant his *Miranda*[1] rights in English and after doing so, presented the waiver of rights document to defendant which defendant signed after reading the waiver paragraph to Officer Harvey in English.[2] The waiver paragraph includes the following statement:

> I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

(Government Exhibit 1). Additionally, the document reflects that the defendant graduated from high school and was not under the influence of a drug or intoxicant at the time of his interrogation. The

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966) (Prior to questioning initiated by law enforcement officers, after a person has been taken into custody or otherwise deprived of his freedom, the person must be warned of specific constitutional rights prior to interrogation).

[2] The waiver document identifies the following rights:

Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

If you decide to answer questions now, without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at anytime until you talk to a lawyer.

(Government Exhibit 1).

3

interrogation was conducted in English and lasted between an hour and an hour and a half. Defendant had no problem responding to Officer Harvey's questions in English.

Detective Bill Bailey of the Hamilton County Sheriff's Department, who was also involved in this investigation, testified on the second day of the hearing. Detective Bailey has been with the Hamilton County Sheriff's Department for approximately ten years and with the narcotics department for one year. Detective Bailey was involved in the narcotic's investigation on January 20, 2005, and was initially located in a parking lot adjacent to the Waffle House parking lot in East Ridge, Tennessee, the location of defendant's arrest. Detective Bailey received information that an Infiniti had entered the Waffle House parking lot and the two Hispanic males inside the Infiniti had, after selecting the incorrect S-10 truck, approached the correct S-10 target truck from which one of the males retrieved the package of money. When Detective Bailey was advised the parties were departing from the parking lot, he intercepted the Infiniti and its two occupants.

Detective Bailey testified that he had previously been informed that a dark truck would be the second vehicle involved in this drug transaction. He was advised one vehicle would be used to deliver the narcotics and one vehicle would retrieve the money. Although Detective Bailey did not observe the dark Ford pickup truck enter the parking lot, he did observe the dark Ford pickup truck parked next to the target truck. Directions were given to approach the Ford pickup truck. Detective Bailey approached the Ford pickup truck and its occupant, the defendant, within seconds after the apprehension of the Infiniti. Detective Bailey opened the door and verbally instructed defendant to exit the vehicle. Defendant exited the vehicle, at which time he was taken to the ground and handcuffed. While handcuffed on the ground, defendant told Detective Bailey's supervisor, in

4

English, that he wished to speak with him in private. Although Detective Bailey observed the canine alert on defendant's vehicle, he did not search the vehicle.

The vehicle was searched by Officer Henry "Hank" Ritter of the Hamilton County Sheriff's Department. Officer Ritter has been with the Hamilton County Sheriff's Department for nine years and is currently a K-9 handler with the traffic division. Officer Ritter testified he had been instructed by Lt. Farmer of the narcotics division to locate near the parking lot of the Waffle House in East Ridge until he was summoned. Officer Ritter was on a side street and upon notification it took him less than a minute to arrive at the Waffle House parking lot. Officer Ritter is the handler of K-9 Jack.

When Officer Ritter arrived at the Waffle House parking lot, the defendants were in custody. Officer Ritter walked K-9 Jack around the black pickup truck several times and K-9 Jack alerted on the vehicle each time he was walked around the vehicle. K-9 Jack alerted at the area behind the driver's side door and at the tailgate. A search revealed approximately 2 kilos of what appeared to be cocaine.

### III. Analysis

#### A. January 20, 2005, Search

Based upon the information received from the cooperating source and the subsequent observations of the officers, taking into consideration the incident which the officers encountered and the totality of the circumstances, I conclude the search of defendant's vehicle on January 20, 2005, was constitutional.

Defendant contends the search of his vehicle was unlawful because no search warrant had been issued and that defendant did not consent to the search of his vehicle. Defendant submitted no

5

evidence during the suppression hearings. An officer may detain an individual for a brief period of time for investigatory purposes where the officer has a reasonable suspicion based on specific and articulable facts that criminal activity is afoot. *Terry v. Ohio*, 392 U.S. 1 (1968); *United States v. Saucedo*, 226 F. 3d 782, 788 (2000). Reasonable suspicion is less than probable cause but more than an inchoate suspicion or hunch. *Saucedo*, 226 F.3d at 788-89.

> The "reasonableness" determination hinges upon objective factors, not the actual subjective motivation of the officer(s) involved. *Bond v. United States*, 529 U.S. 334 & n. 2, 120 S.Ct. 1462, 1465 & n. 2, 146 L.Ed.2d 365 (2000); *Whren v. United States,* 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). The "reasonableness" of an "articulable suspicion" is assessed with reference to the totality of the relevant circumstances. *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). The two-part *Terry* "objective reasonableness" paradigm inquires "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances that justified the interference in the first place." *Terry*, 392 U.S. at 20, 88 S.Ct. 1868.

*Id.* at 789. Implicit in this standard is the requirement that the articulable suspicion must be based on facts known to the police at the time the decision to detain is made. This reasonable suspicion must also be directed at the very person who is detained. *United States v. Cortez*, 449 U.S. 411, 417-18 (1981) (Reasonable suspicion must be based upon "a particularized and objective basis for suspecting the particular person...of criminal activity"); *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) ("a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person").

Clearly, law enforcement officers had a reasonable suspicion that criminal activity was afoot in the area of the Waffle House parking lot in East Ridge, Tennessee, at this time. Officers knew a drug deal was to take place with the narcotics source and the confidential source (CS) at the Waffle House parking lot during the time they were surveilling the scene. Surveillance observed the two

6

Hispanic males in the Infiniti approach the Waffle House parking lot and observed one of the men enter the wrong S-10 pickup truck and search for the package of money. Surveillance then observed one of the Hispanic males enter the correct S-10 target vehicle and retrieve the package of money. After returning to the Infiniti with the money, officers approached the two men and placed them under arrest.

While the two Hispanic males were being detained, Detective Bailey approached defendant as he was parked next to the target vehicle. Detective Bailey opened defendant's truck door and pursuant to Detective Bailey's instruction, defendant exited his vehicle. At that time defendant was taken to the ground and handcuffed. Officer Ritter along with K-9 Jack approached defendant's vehicle and K-9 Jack alerted on defendant's vehicle. K-9 Jack's alert provided probable cause to search defendant's vehicle. Thus, neither defendant's consent nor a warrant were required to search defendant's vehicle under these circumstances. The ensuing search revealed narcotics.

Detective Bailey lawfully approached and detained defendant. Thus, Officer Ritter's arrival at the scene while the detention was in progress and the use of K-9 Jack to sniff around the exterior of defendant's truck did not rise to a level of cognizable infringement on defendant's Fourth Amendment rights. The Fourth Amendment does not require a reasonable, articulable suspicion to justify using a drug-detention dog to sniff a vehicle during a legitimate traffic stop. *Illinois v. Caballes*, 125 S.Ct. 834, 837 (2005). Nevertheless, the circumstances before this Court reveal that law enforcement, at the very least, had a reasonable, articulable suspicion to justify using a drug-detention dog to sniff defendant's vehicle during his legitimate detention. Defendant does not contend that the initial seizure of him was unlawful, nor does the record support such a contention. Defendant does not contend that his detention was prolonged beyond the time reasonably required

7

for law enforcement to complete their purpose. The record before the Court indicates the initial citizen-police encounter was a drug investigation, supported at least by reasonable suspicion but arguably by probable cause, of defendant's possession of narcotics. The record reflects that K-9 Jack was a well-trained narcotics-detection dog.[3] *See United States v. Boxley*, 373 F.3d 759, 761 (6th Cir. 2004) ("[I]n order to admit evidence of a dog's alert to an aroma of drugs, it is not necessary to provide the dog's training and performance records . . . [T]estimony as to the dog's record is sufficient"). Although a dog sniff is not itself a search, *United States v. Place*, 462 U.S. 696 (1983), a positive alert by a drug dog generally supplies probable cause to search. *United States v. Hill*, 195 F.3d 258, 273 (6th Cir. 1999).

In this case, the dog sniff was performed on the exterior of the defendant's vehicle while defendant was lawfully detained; thus, there was no constitutional violation and the alert provided probable cause to justify the ensuing search of the vehicle. "A positive indication by a properly-trained dog is sufficient to establish probable cause for the presence of a controlled substance." *United States v. Diaz*, 25 F.3d 392, 393-94 (6th Cir. 1994). Defendant does not contend the dog was not properly trained, nor does he question the proposition that a dog alert can establish probable cause.

---

[3] Defendant does not challenge K-9 Jack's training or credentials. The record reflects K-9 Jack had been certified prior to Officer Ritter becoming his handler. In 2004 Officer Ritter attended a nine to ten week, forty hour a week, training course to enable him and K-9 Jack to become a certified team. Officer Ritter and K-9 Jack train weekly through the summer, and biweekly at other times. In addition, Officer Ritter testified he engages K-9 Jack in training at home almost every day. K-9 Jack is trained to alert to the odor of narcotics.

Having determined that the police reasonably seized and detained the defendant, and that the canine alert provided probable cause to search the defendant's vehicle, the Court concludes the search of defendant's vehicle was constitutional.

B. January 20, 2005, Statement

In addition to challenging the search of his vehicle, defendant challenges the voluntariness of his statement. Defendant maintains that the statement given by him to the arresting officers should be suppressed because the detectives failed to "review the *Miranda* warnings to him in Spanish" (Court File No. 56). There was no testimony from the defense during either hearing to support his motion to suppress his statement. In his motion, defendant asserts he has the ability to understand many words in English and is conversant to the degree of being able to understand simple concepts. However, according to defendant, the government must prove he was properly advised of his rights in a language he understands.

Defendant seeks suppression of his statements made to law enforcement on January 20, 2005, presumably on the grounds that he did not knowingly and voluntarily waive his *Miranda* rights due to law enforcement's failure to properly advise him of his rights in a language which he understood. In order to determine whether a waiver of *Miranda* rights is knowing and voluntary a court must examine the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). Factors to consider under the totality of the circumstances test include: "age, intelligence, and education of the individual; whether the individual understands the right to refuse to consent; whether the individual understands his or her constitutional rights; the length and nature of detention; and the use of coercive or punishing conduct by the police." *United States v. Riasco-Suarez*, 73 F.3d 616, 625 (6th Cir.), *cert. denied*, 519 U.S. 848 (1996).

The burden is on the government to show by a preponderance of the evidence that a defendant voluntarily waived his *Miranda* rights. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986). A waiver of *Miranda* rights will be voluntary if it is "'the product of a free and deliberate choice rather than intimidation, coercion or deception ... [and] made with full awareness both of the nature of the right to be abandoned and the consequences of the decision to abandon it.'" *United States v. Treadwell*, 11 Fed. Appx. 502, 510 (6th Cir.) (unpublished table decision), *available in* 2001 WL 599709, at *9, *cert. denied*, 534 U.S. 928 (2001) *quoting Moran v.Burbine*, 475 U.S. 412, 421 (1986). Thus, the Court must first determine whether defendant voluntarily relinquished his rights and whether such relinquishment was the product of a free and deliberate choice rather than the product of intimidation, coercion, or deception. Then the Court must determine whether the waiver was made with full awareness of both the nature of the rights being abandoned and the consequences of the decision to abandon the rights. If the totality of the circumstances reveal that an uncoerced choice was made with the requisite level of comprehension, then the Court may properly conclude that the *Miranda* rights were voluntarily and knowingly waived. *See Moran v. Burbine*, 475 U.S. 412, 421 (1986).

Officer Harvey testified he gave defendant his *Miranda* warnings and, after reading his *Miranda* rights to him, Officer Harvey gave the document to the defendant and he signed the waiver. Officer Harvey and defendant conversed in English and defendant read the last paragraph of the waiver of rights to Officer Harvey in English. Officer Harvey testified that Officer Eisenbeis was present at their office on Oak Street as an interpreter but departed upon determining defendant could speak and understand English. Although Officer Harvey could not remember whether defendant was in handcuffs when he gave his statement, he testified if handcuffs were on the defendant, his

10

hands were cuffed in front of him.  Officer Harvey testified the interrogation lasted between an hour and an hour and a half and all parties were cordial and respectful to each other.  Officer Harvey also testified that defendant said he was a United States citizen but was educated in Mexico.

Detective Bailey testified that when he opened defendant's vehicle door and directed him to exit the vehicle, defendant spoke English.  In addition, Detective Bailey heard defendant speak to his supervisor in English, telling him he would like to talk to him in private.

There is no evidence in the record that defendant was subjected to intimidation, coercion, or deception.  No evidence was presented to the undersigned that defendant did not speak and understand English or that he did not knowingly and voluntarily waive his *Miranda* rights.[4]  The record reflects defendant speaks and understands English and that he voluntarily relinquished his rights; a relinquishment that was the product of his free choice and not coercion.  Additionally, the record reflects defendant was aware of his rights and understood the consequences of the decision to abandon those rights and give law enforcement a statement.  Accordingly, based on the record before me,  I find defendant knowingly and voluntarily waived his *Miranda* rights and voluntarily gave statements to law enforcement.

---

[4] Out of an abundance of caution, the Court did provide an interpreter during the suppression hearings.

IV. Conclusion

For the reasons stated herein, it is **RECOMMENDED** that defendant's motion to suppress (Court File No. 56) be **DENIED**.[5]

          s/William B. Mitchell Carter
          UNITED STATES MAGISTRATE JUDGE

---

[5] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).